UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN LINDKE,
    Plaintiff,

v.

JAMES R. FREED,
in his personal and official capacities,
    Defendants

                                                     /

Case No.: 20-cv-10872
Honorable _____

**COMPLAINT**
**JURY DEMANDED**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**COMPLAINT FOR VIOLATIONS OF THE FIRST AMENDMENT**

NOW COMES Plaintiff KEVIN LINDKE, by and through counsel, and complains as follows:

### INTRODUCTION

1. The government of the City of Port Huron uses social media, particularly Facebook, as a point of contact, an important source of information about the government, and an important public forum for speech

1

between private citizens and the City of Port Huron and its officials, and regarding the latter's actions and policies.

2. Social media platforms like Facebook provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).

3. Facebook enables ordinary citizens to speak directly to public officials and to listen to and debate others about public issues, in much the same way they could if they were gathered on a sidewalk or in a public park, or at a city council meeting.

4. In an effort to suppress dissent or unfavorable viewpoints in this forum, the City Manager, as the named defendant, has deleted and continues to regularly and consistently delete Facebook "posts" that have criticized the Mayor, the City Manager, or other city officials or their policies, particularly when challenged about the City's response to the COVID-19 pandemic crisis.

5. This practice is unconstitutional under the First Amendment, and this suit seeks to end it.

## PARTIES

6. Plaintiff KEVIN LINDKE is a long-time resident of St. Clair County, Michigan and a current resident of the City of Port Huron, Michigan.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

7. Defendant JAMES R. FREED is a public official serving in the office of the City Manager of the City of Port Huron; he is named in both his individual and official capacities.

8. Federal law (42 U.S.C. § 1983) directs that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

## JURISDICTION

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act.

10. Venue is proper in this judicial district.

## GENERAL ALLEGATIONS

11. Facebook is a "social network" consisting of an online community to facilitate people, businesses, and institutions finding and forming connections through an exchange of different content.

12. A Facebook "user" is an individual, business, or institution who has created an account on the social media platform.

13. There are two main types of users: the first are individuals who have "Profiles" and the second are "businesses, brands, organizations and public figures" who have Facebook "Pages."[1]

14. Users of Facebook can "post" or digitally share text, written messages, photographs, videos, or links to other articles or webpages on their respective Profiles (for individuals) or Pages (for businesses, brands, organizations and public figures).

15. As users "post" their text, written messages, photographs, links to articles, and videos, these aggregate within each user's "newsfeed" which creates an ongoing list of activities happening on Facebook Pages and Profiles to permit a user to "see what's going on" or going "viral" on Facebook.

---

[1] https://www.facebook.com/help/337881706729661

4

16. In addition to these actions, users can "like" (clicking a thumbs-up sign) or otherwise "comment" in response to the "posts" of text, written messages, photographs, videos, or links to other articles or webpages.

17. Here, for example, is a post from the official White House Facebook Page (administered by the federal government) and some comments thereafter—



OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

5

18. By default, everyone can comment on public posts and such is an open forum.

19. Users can also add written replies to prior submitted comments to support, oppose, or debate the substance of a prior comment as posted.

20. Comments are generally not moderated or be pre-approved by Facebook, but posts or comments can be removed, in infrequent instances, for not meeting the basic "community standards" required by the social media platform as a term of its use.

21. However, unfavorable comments of and regarding government officials, objections to government policies or announcements, and general dissent to ideas or concepts shared in "posts" are not improper uses under Facebook's community standards.

22. Notwithstanding, the owner or administrator of a Page can hide or delete comments made in response to a "post" on the Page.[2]

### City Manager and his Facebook "Page"

23. Defendant James R. Freed is the City Manager for the City of Port Huron, see https://www.porthuron.org/departments/city_manager/.

---

[2] https://www.facebook.com/help/248844142141117/?helpref=hc_fnav

24. Like many other public figures, Defendant James R. Freed has a Facebook "Page" (as opposed to just a Profile) with a username of JamesRFreed1.

25. Defendant James R. Freed is a public figure, see **Exhibit A**.

26. On this Facebook "Page" (a feature reserved for businesses, brands, organizations and public figures as oppose to his personal Profile which is not public), Defendant Freed makes posts for general public dissemination, including things like—

    a. Official policy announcements and official city government communications;

    b. Highlights of local business, nonprofits, and members of the community from, in, and involving the City of Port Huron for self-promotion; and even

    c. Pithy posts for general humor and enjoyment of the constituents of the City of Port Huron.

27. The posts on the Facebook "Page" of Defendant Freed permit citizens and users to offer comments to the posts, both supportive and critical.

28. Here is an example—

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com



29. By this example post, Defendant Freed was advocating support of Governor Whitmer's recent social distancing measures imposed as a result of the COVID-19 crisis and the City's decision for early installation of the community fishing dock that "we" (meaning the City of Port Huron) did to those who wish to "social distance while fishing."

30. In response, one user _unrelatedly_ asked if the City of Port Huron will be picking up lawn and leaf bags soon, to which Defendant Freed confirmed the same.

31. However, another user _relatedly_ questioned the action of installing the fishing dock and whether it would be furtherance of the social distancing directives in effect in Michigan.

32. As such, Defendant James Freed's Facebook Page is a traditional public forum.

33. However, Defendant Freed is not accepting and receptive to comments which are _highly_ critical of his actions, the actions of the Mayor of Port Huron, and the actions or inactions of the City of Port Huron government.

34. The catalyst of the current dispute in this lawsuit was the onset of the COVID-19 crisis.

35. COVID-19 is a novel coronavirus not been previously medically identified which caused a public health crisis in the State of Michigan.

36. COVID-19 is a highly contagious respiratory illness that can spread from person to person which was first reported in the United States on January 21, 2020, see **Exhibit C**.

37. COVID-19 can and does cause pneumonia in the lungs, multi-organ failure and in some cases death.

38. On March 10, 2020, Michigan Governor Whitmer issued Executive Order No. 2020-4 declaring a "State of Emergency" related to identified infections of two Michigan residents on that same day.

39. A fair and accurate copy of Executive Order No. 2020-4 is attached as **Exhibit D**.

40. Since then, things have gotten progressively and exponentially more serious in both Michigan and Port Huron.

41. On March 10, 2020, Michigan Governor Whitmer issued Executive Order No. 2020-21 imposing a temporary suspension of normal daily activities to the extent the same are not necessary to sustain or protect life.

42. A fair and accurate copy of Executive Order No. 2020-21 is attached as **Exhibit E**.

43. In response to these Executive Orders, citizens of Port Huron and beyond (with Facebook accounts) questioned the role and activities of the government of the City of Port Huron to the COVID-19 crisis.

44. Plaintiff Kevin Lindke posted on Defendant Freed's Facebook "Page" various comments directly questioning the early inaction and inattention of the government officials of the City of Port Huron (including Defendant Freed and Port Huron Mayor Pauline Repp) in response to the COVID-19 crisis.

45. In response and finding the comments and questioning of Plaitniff Lindke to be politically unfavorable, Defendant Freed took two general actions.

46. First, Defendant Freed simply deleted (i.e. destroyed) the comments critical of the government officials of the City of Port Huron (including Defendant Freed and Port Huron Mayor Pauline Repp) and their early inaction as it applied to the COVID-19 crisis.

47. Second, Defendant Freed then used the "moderation" features of Facebook to prohibit (i.e. ban) Plaintiff Kevin Lindke from posting any other additional comments to the Facebook Page thereby precluding any further comments critical of the government officials of the City of Port Huron

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

(including Defendant Freed and Port Huron Mayor Pauline Repp) as it applied to the COVID-19 crisis.

48. The deletion of critical comments and banning users from posting further critical messages on the City Manager's Facebook Page was not limited to only Plaintiff Lindke but also six other known Facebook users who are residents or an interest in the action or inaction of government officials of the City of Port Huron (including Defendant Freed and Port Huron Mayor Pauline Repp) or otherwise have connection to friends/family in Port Huron who would be affected by the action or inaction of government officials of the City of Port Huron (including Defendant Freed and Port Huron Mayor Pauline Repp).

49. After deleting critical comments and banning disfavored Facebook users (i.e. commenters) critical of the action or inaction of government officials of the City of Port Huron, Defendant Freed was informed that such past and ongoing action(s) by him were unconstitutional and violations of the First Amendment, including by comments provided by users of Facebook.

50. Despite being so expressly informed, Defendant Freed has continued to delete critical comments and failed to unban users who are not

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

technologically prohibited from commenting due to Defendant Freed's actions.

## COUNT I
## VIOLATIONS OF THE FIRST AMENDMENT
## DELETING COMMENTS - 42 U.S.C. § 1983

51. The previously paragraphs are realleged word for word herein.

52. By deleting unfavorable or politically disadvantageous comments from the traditional public forum[3] consisting of the Facebook Page maintained by the City Manager of the City of Port Huron, Defendant Freed has violated and continues to violate the First Amendment of the United States Constitution.

53. The deprivation of such First Amendment activities has harmed and continues to cause harm Plaintiff Kevin Lindke and others who had their similarly critical comments deleted.

54. The actions of Defendant Freed in his official capacity is a policy or custom sufficient to impose liability pursuant to *Monell*.

55. The acts and decisions of Defendant Freed was designed by him to intentionally or wantonly causing harm to Plaintiff Kevin Linke due to the utter disregard of Plaintiff's federally protected rights.

---

[3] To the extent this Court does not view the Facebook Page as a traditional public forum, then it is alternatively a limited public forum.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

13

## COUNT II
## VIOLATIONS OF THE FIRST AMENDMENT
## BANNING USERS/COMMENTERS - 42 U.S.C. § 1983

56. The previously paragraphs are realleged word for word herein.

57. Defendant James Freed has purposely and intentionally blocked Plaintiff Kevin Lindke and several others from being able communicate by "commenting" on the traditional public forum[4] consisting of the Facebook Page maintained by the City Manager of the City of Port Huron solely due to the viewpoint taken by Plaintiff Kevin Lindke and several others who criticized Defendant Freed, the City government's actions or inactions, and the support/opposition to government policies of the City of Port Huron as it applies to the COVID-19 crisis (hereinafter the "Freed Ban").

58. The Freed Ban imposed by Defendant Freed against Plaintiff Kevin Lindke and several others from being able communicate via "commenting" on the traditional public forum consisting of the Facebook Page maintained by the City Manager of the City of Port Huron has occurred and has continued to occur through the date of filing of this lawsuit (i.e. remains ongoing).

59. The deprivation of such First Amendment activities by communications banishment and the related retaliation for exercising First

---

[4] See Footnote 3.

Amendment rights of Plaintiff Kevin Lindke and several others has harmed and continues to cause harm Plaintiff Kevin Lindke and others who have been banned by Defendant Freed.

60. The actions of Defendant Freed in his official capacity is a policy or custom sufficient to impose liability pursuant to *Monell*.

61. The acts and decisions of Defendant Freed was designed by him to intentionally or wantonly causing harm to Plaintiff Kevin Lindke due to the utter disregard of Plaintiff Kevin Lindke's federally protected rights.

## RELIEF REQUESTED

62. WHEREFORE, Plaintiff Kevin Lindke respectfully requests this Court to—

    a. Enter an order, pursuant to the Declaratory Judgment Act, declaring the conduct of Defendant as being unconstitutional under the First Amendment to the United States Constitution;

    b. Enter an order for injunctive relief to halt and also prevent the ongoing future violations the guarantees of the First Amendment to the United States Constitution;

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

  c. Enter an order awarding all nominal and actual damages, with interest, as warranted for Defendant's illegal a nd unconstitutional actions;

  d. Enter an order for an award of punitive damages; and

  e. Enter an order for all such other relief the court deems equitable.

## JURY DEMAND

63. For all triable issues, a jury is hereby demanded.

Date: April 3, 2020      RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison  
OUTSIDE LEGAL COUNSEL PLC  
BY PHILIP L. ELLISON (P74117)  
Attorney for Plaintiff  
PO Box 107 · Hemlock, MI 48626  
(989) 642-0055  
(888) 398-7003 - fax  
pellison@olcplc.com