UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LINDKE,

       Plaintiff,                        Case No. 20-10872

vs.                                     HON. MARK A. GOLDSMITH

JAMES R. FREED,

       Defendant.

_____/

**OPINION & ORDER**
**GRANTING IN PART PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER (Dkt. 13)**

Plaintiff Kevin Lindke has filed a motion for a protective order to quash certain discovery requests and to limit the scope of discovery to the issue he claims to comprise this case—Defendant James R. Freed's actions in deleting Lindke's comments posted on Freed's Facebook page and banning Lindke from further posting on his Facebook page. The motion is granted in part. The discovery requests at issue are quashed, because Freed has failed to articulate with specificity a claim or defense to which they are relevant. However, Lindke's broader request is denied, because it is not prudent for the Court to articulate limits to discovery without concrete discovery requests to evaluate.

                    **I.    BACKGROUND**

Lindke, a self-described "political 'gadfly,'" Mot. at 6, has sued Freed, the City Manager of the City of Port Huron, Compl. ¶ 7 (Dkt. 1). According to Lindke, Freed violated the First Amendment when he deleted "unfavorable or politically disadvantageous comments from the traditional public forum consisting of the Facebook Page" Freed maintained, see Compl. ¶ 52, and when he "intentionally blocked Plaintiff Kevin Lindke and several others from being able to

communicate by 'commenting' on the traditional public forum" consisting of Freed's Facebook page, Compl. ¶ 57. This suit is premised on the holding in a Second Circuit opinion that "the First Amendment does not permit a public official who utilizes a social media account for all manner of official purposes to exclude persons from an otherwise–open online dialogue because they expressed views with which the official disagrees." See Knight First Amendment Institute at Colum. Univ. v. Trump, 928 F.3d 226 (2d Cir. 2019), petition for cert. filed, (Aug. 20, 2020) (20-197).

At issue in the pending motion are discovery requests asking that Lindke do the following:

1. identify all Facebook accounts, profiles, pages, and groups that Plaintiff has used, maintained, and/or controlled at any time between the dates of July 2017 and the present, whether currently active or inactive;
2. [produce a] download of any Facebook pages, profiles, or groups identified . . . that Plaintiff owns or controls.
3. identify each individual Facebook page, account or group where Plaintiff has posted negative comments about Defendant.
4. identify each person who has been the target of any negative posts made by Plaintiff on Facebook from July 2017 to the present.
5. identify the name of the petitioner, the case number, and the current status of the PPO for each personal protection order of which Plaintiff has been the respondent based in whole or in part upon social media posts or messages made by Plaintiff.
6. identify all individuals who have made police complaints against Plaintiff based in whole or in part on social media posts or messages between the time period of July 2017 and the present.

Mot. at 7.[1]

Lindke challenges each of those requests, and "Defendant's overall litigation strategy to demand materials outside the limits of the dispute . . . ." Id. at 8.

---

[1] The Court has assigned these numbers for ease of reference.

2

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 allows for broad discovery in litigation, including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Although Rule 26 was amended in 2015 to emphasize the importance of the "proportionality" requirement, the "basic tenet that Rule 26 is to be liberally construed to permit broad discovery" remains unaltered. State Farm Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C., 315 F.R.D. 220, 222 (E.D. Mich. 2016); Martin v. Bimbo Foods Bakeries Distribution, LLC, 313 F.R.D.1, 5 (E.D.N.C. 2016) ("The rules of discovery, including Rule 26, are to be given broad and liberal construction."). Relevance, in turn, "has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." Martin, 313 F.R.D. at 5 (internal marks and citations omitted).

When ruling on discovery-related motions, the district court has broad discretion to determine the proper scope of discovery, including whether a "discovery request is too broad and oppressive." Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007); see also Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 402 (6th Cir. 1998). In doing so, the district court must balance the "right to discovery with the need to prevent 'fishing expeditions.'" Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998).

## III. ANALYSIS

Lindke argues, primarily, that the disputed discovery requests are irrelevant to the case, which he claims should be confined solely to his comments on Freed's page, and not extended to Lindke's other social media activity. Mot. at 9-10. In turn, Freed argues that the "discovery is targeted and directly relevant to two issues raised by Plaintiff in his Complaint." Resp. at 12. The

3

first issue, according to Freed, is "whether Defendant Freed's actions were the result of intentional viewpoint discrimination or whether his actions were unrelated to Plaintiff's alleged COVID-19 criticism and instead based upon the fact that Plaintiff is a 'cyberbully.'" Id. at 12-13. As part of this analysis, Freed argues, "it is necessary to take discovery of the extent of Plaintiff's cyberbullying activities . . . ." Id. at 13. "The second issue is whether the posts by other individuals (Plaintiff asserts there were six) were posts either encouraged or controlled by Plaintiff." Id.

Concerning the first issue, Freed argues that the disputed discovery requests are relevant to the question of whether Freed discriminated based on Lindke's viewpoints, or whether he acted to prevent cyberbullying. The problem with this argument is that Freed does not adequately explain what he means by "cyberbullying." Without an adequate definition of "cyberbullying," the Court cannot evaluate the relevance of discovery concerning the following: (i) Lindke's activities on other accounts, profiles, pages, and groups; (ii) his criticism of Freed in forums other than Freed's Facebook page; and (iii) his alleged cyberbullying against individuals other than Freed.

"Cyberbullying" has a wide range of definitions in the law and in common discourse. See, e.g., David Hudson, Cyberbullying and Freedom of Speech, 50 N.M L. Rev. 287, 288 (2020) ("Approximately twenty-five (25) states have cyberbullying statutes. They vary significantly in their verbiage and coverage."). "Cyberbullying" can describe anything from the posting of "true threats," which are generally unprotected by the First Amendment, to the posting of annoying or embarrassing materials, which may be a protected part of contemporary political discourse. See generally id. (providing Michigan's criminal cyberbullying statute, Mich. Comp Laws § 750.411x, as an example of as statute defining "cyberbullying" in a manner akin to true threats). Depending

on which of this term's many meanings Freed intended to adopt, he may be entitled to discovery regarding Lindke's alleged cyberbullying of others and regarding Lindke's criticism of Freed in contexts other than Freed's Facebook page. But at this juncture, Freed has not adequately explained his cyberbullying defense, or why the contested discovery relates to Lindke's claims or his own defenses. Until Freed does so, Lindke is entitled to protection from discovery requests that do not appear to be relevant to any claim or defense.

Concerning the second issue, the question of whether the six individuals mentioned in the complaint were actually Lindke is potentially relevant to the case. For that matter, all comments Lindke posted or caused to be posted on Freed's page have potential relevance. Freed's reasons for regulating his Facebook page as he did is at the heart of this case, and the identities of certain users may well be probative of his motives and whether those motives were unlawful. However, the discovery requests to which that issue is potentially relevant—numbers one and two—are overly broad for this purpose, because they may require Lindke to reveal accounts, profiles, pages, and groups having nothing to do with Freed. Those discovery requests are quashed, although Freed may be entitled to discovery more narrowly tailored to seek relevant information about Lindke's involvement with posts made on Freed's page.

Lindke requests not only that the specific discovery requests named and discussed above be quashed, but also that the Court "enter a protective order limiting the scope of discovery (and the scope of this case) to the issues solely related to challenged actions on City Manager Freed's public figure Facebook Page, i.e. the deletion of comments and the banning of Plaintiff Lindke's ability to post comments on said public figure Facebook Page in violation of the First Amendment." Mot. at 13. To the extent Lindke seeks to limit discovery to matters that are relevant to the parties' claims and defenses, discovery is already so limited. Fed. R. Civ. P. 26(b)(1). To

the extent that Lindke seeks to limit discovery only to matters that are relevant to his claim, exactly how he defines it, that would not be prudent at this juncture. Courts should evaluate the scope of discovery in the light of particular requests, rather than attempt to fashion broad guideposts untethered to a specific discovery dispute.

This order is without prejudice to further efforts by Freed to refine his discovery requests or articulate a theory of the case under which the requests quashed by this order would be relevant.

## IV. CONCLUSION

Lindke's motion (Dkt. 13) is granted in part. The discovery requests enumerated above numbered one through six are quashed. The balance of the motion, in which Lindke requests a limitation to discovery unrelated to any specific discovery requests, is denied.

SO ORDERED.

Dated: November 2, 2020  
       Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge