UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KEVIN LINDKE,

        Plaintiff,

vs.

JAMES R. FREED
in his individual and official capacities,

        Defendant.

Case No. 2:20-cv-10872

Hon. Mark A. Goldsmith
Magistrate Judge:
Hon. David R. Grand

_____

PHILIP L. ELLISON (P74117)
Outside Legal Counsel PLC
Attorney for Plaintiff
PO Box 107
Hemlock, Michigan 48626
(989) 642-0055
pellison@olcplc.com

TODD J. SHOUDY (P41895)
VICTORIA R. FERRES (P78788)
Fletcher Fealko Shoudy & Francis, P.C.
Attorneys for Defendant
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tshoudy@fletcherfealko.com
vferres@fletcherfealko.com

_____

**JOINT STATEMENT REGARDING FURTHER PROCEEDINGS**

Pursuant to the Court's Order directing the parties to file a Joint Statement setting forth their points of agreement and disagreement (if any) regarding what further proceedings are required in this case, the parties hereby file their positions on this issue.

**PLAINTIFF'S POSITION**

This Court originally decided this case on the single ground of "state action" by using a "non-exhaustive" fourteen-factor balancing test to determine whether Defendant City Manager James Freed was a state actor. *Lindke v. Freed*, 563 F. Supp. 3d 704, 710-711 (E.D. Mich. 2021). Despite Plaintiff establishing the greater majority of the factors in his favor, the Court sided with Freed. An appeal followed.

On appeal, the Sixth Circuit rejected this Court's utilized test while expressly "parting ways with other circuits' approach to state action" to adopt its own self-created "duty-or-authority" test. *Lindke v. Freed*, 37 F. 4th 1199, 1206 (6th Cir. 2022). In its view, we are not supposed to "examin[e] a page's appearance or purpose" like done by others but instead "on the actor's official duties and use of government resources or state employees." *Id.*

Thereafter, the Supreme Court saw things differently than the prior two courts and the other circuits. "The distinction between private conduct and state action turns *on substance*, not labels." *Lindke v. Freed*, 601 U.S. 187, 197 (2024) (emphasis added). When a public official wields the "authority of the state," he or she

2

"engage[s] in state action." *Id.* at 196-198. Our Nation's highest court rejected the Sixth Circuit's test, vacated its decision, and remanded.

On remand, the Sixth Circuit reminded everyone what the Supreme Court confirmed—this case is structured as a two-parter, i.e. that Freed "violated Lindke's free-speech rights" by 1.) "blocking" Lindke and 2.) "deleting" comments. *Lindke v. Freed (On Remand)*, 114 F.4th 812, 815 (6th Cir. 2024). Acknowledging that "the Supreme Court adopted a different test" than what it had, the panel confirmed that the "factual record isn't developed enough for us to apply the Supreme Court's revised test" and remanded for to this Court "for further proceedings." *Id.*

To avoid gathering the full record to actually apply the Supreme Court's enumerated test, Defendant wants this Court to literally address *anything* else other than allowing for properly developed record.[1] The reason is to try to spike a merits decision that has been a long-time coming, i.e. that Freed violated the First Amendment.

Freed wants to first argue mootness – a difficult defense – before discovery because, in his view, his Facebook page has been self-deactivated while this lawsuit has been pending. But that was from his own self-doing and can be reactivated on

---

[1] For example, Freed asserts that Plaintiff was provided the entire available Facebook history of the "JamesRFreed1" Facebook page in response to a document request submitted to Defendant. But that is not true. All the comments were withheld (see ECF No. 28-6) and the new *Lindke* test requires deletions to be reviewed using a "post-by-post" analysis rather than taking an account or profile-wide view.

3

his say-so. That is why "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *E.E.O.C. v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012) (citing *United States v. W.T. Grant*, 345 U.S. 629, 633 (1953)).

Additionally Freed also wants to assert qualified immunity, which (in Freed's best possible scenario) is only a *partial* defense. Qualified immunity is not assertable by Freed while being sued in his *official* capacity. *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 484 (6th Cir. 2014) ("qualified immunity was not an available defense in an official-capacity suit"). And if he asserts this affirmative defense while being sued in his *personal* capacity, it (at best) only bars the damages remedy for illegal acts taken before *Lindke*. And it does not bar an injunctive or declaratory remedy either pre- or post-*Lindke*. *Kanuszewski v. Mich. Dep't of Health and Human Servs.*, 927 F.3d 396, 417-418 (6th Cir. 2019). These defenses are not case dispositive.

But there is a bigger consideration at play that Freed uses to acknowledge or engage. In the last few years while this case was on appeal, Freed has shifted his online operations from one social media platform (Facebook) to another (LinkedIn) to attempt to try to avoid an adverse ruling from this Court. He has opened and built up a robust LinkedIn account using the same username of "jamesrfreed" in amassing nearly 2,500 followers. See https://www.linkedin.com/in/jamesrfreed/ (**Exhibit A**). Just like before, this social media page has both personal (like photos of his daughter)

4

as well as important city announcements, documents, and policy decisions instead of at some sort of official social media page. **Exhibit B**. Posts include videos of official city press conferences (https://www.linkedin.com/posts/jamesrfreed_this-mornings-press-conference-at-the-municipal-activity-7229932971909136384-XiQZ); published official policy positions (https://www.linkedin.com/in/jamesrfreed/recent-activity/documents/); and even major government decisions (https://www.linkedin.com/posts/jamesrfreed_black-river-zcanal-memo-activity-7293440284342853632-N0nA). When Freed operated the disputed Facebook page, Lindke could at least *see* Freed's posts after being blocked but could no longer comment on them. For LinkedIn, there is no zero access for the now-blocked Lindke because Freed currently bans him (while not others) from accessing or viewing the same and also bans Lindke from any participation for commenting (yet makes commenting available to everyone else). This development is important because this legal challenge is truly about the scope of the public's accessibility and interaction with government officials, together with formal communications and their decision-making, rendered publicly via their non-purely personal *social media accounts* (plural), not just this city manager's singular Facebook page.

The practices at the new LinkedIn platform are the same as the long-challenged Facebook page. Freed has the same type picture with the official pin; labels the account as being the "City Manager, Chief Administrative Officer at City

5

of Port Huron"; associates and operates the account with his official government email address and credentials; fails to have any suggested disclaimer that the Supreme Court had strongly hinted he should have; and publicly re-proclaims he "believes strongly that regular communication [like via LinkedIn] with local businesses and residents is essential to good government…" https://www.linkedin.com/in/jamesrfreed (in "About" section); *Lindke*, 601 U.S. at 202.[2] Freed is making the very same types of posts and offering the same chances to the public (while excluding Lindke) to have official interaction with a key government official discussing city and public business that he confirms is "*essential* to good government." *Compare* **ECF No. 28-6** *with* **Exhibit B**. He has made the same type of social media posts that involve city business while preventing disfavored residents from the viewing them and making comments in opened public forum that other favor citizens fully enjoy. Even with five years of expensive litigation, Freed has taken no heed in separating public business from his personal or private musings. In short and in a shocking display of audacity, Freed has simply repackaged the same legal problems into his LinkedIn page just as he had done previously with Facebook page and hopes this Court won't take notice, *compare* **ECF No. 28-6, PageID.1220** *with* **Exhibit C**, and even including the blocking of

---

[2] "Had Freed's account carried a label (*e.g.,* 'this is the personal page of James R. Freed') or a disclaimer (*e.g.,* 'the views expressed are strictly my own'), he would be entitled to a heavy (though not irrebuttable) presumption that all of the posts on his page were personal."

Lindke.

As such and given the current ban Freed has imposed against Lindke at now *both* Facebook and LinkedIn, the case is not moot even if Freed's new preferred social media platform is LinkedIn page rather than any claimed voluntarily cessation of the use of his city manager Facebook account. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006) ("An exception to the mootness doctrine exists for wrongs that are 'capable of repetition, yet evading review.'"); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019) ("Voluntary cessation of the alleged illegal conduct does not, as a general rule, moot a case" and will only d so "where there is 'no reasonable expectation that the alleged violation will recur,' and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'").

To streamline things with the new developments, Lindke would like to amend his complaint he filed over five years ago. Freed is blatantly committing the same legal wrongs but only now using a different social media platform with the same illegal practices. Freed's purposeful misuse of social media "blurs the line between professional messaging by state actors and personal communication among citizens." Erin Cummings, *First Amendment – State Action Doctrine: New Rule for State Action on Social Media*, 100 N.D. L. Rev. 143, 146 (2025). Freed's now repeated failure "to keep personal posts in a clearly designated personal account []

exposes himself to greater potential liability." *Lindke*, 601 U.S. at 204. And given that all of this is occurring actively and currently in the post-*Lindke* world on LinkedIn and Facebook, qualified immunity does not apply as our Supreme Court has provided a clear social-media-centric test and the Sixth Circuit has explained how precisely these claims can be precisely pursued to establish First Amendment violations.

For example, the Sixth Circuit explained that claims made about deletions must be done using a "post-by-post analysis" but in a "straightforward" way—"look at the allegedly offending posts" and "determine whether any of those posts represented state action." 114 F.4th at 818. This is different than how everyone, including this Court, originally understood the test being based on "appearance-and-function" of the account as a whole. See Cummings, 100 N.D. L"?w. R"?v. at 147 fn.35 (collecting cases). Additionally, the Sixth Circuit also separately confirmed that "when it comes to Freed's wholesale 'blocking' of Lindke from accessing his page, Lindke need only identify *one single post* on Freed's account that represented state action." 114 F.4th at 818. That seems easy enough. See Exhibit C. Because this level of specificity is required, an amendment to the pleadings would make sense to clarify, narrow, and specifically-plead the precise claims especially given that the Supreme Court's test in *Lindke* "changes the relevant inquiries." *Id.* at 820. It is doubly true for issues for which Lindke has *not* "had a chance to develop… the first

8

time around" like the LinkedIn account mirroring the same practices. *Id.* After all, the Supreme Court was clear – separate analysis must be performed pertaining of removing comments versus page-wide blocking. Cummings, 100 N.D. L AW . R EV . at 151 (citing *Lindke*, 601 U.S. at 204).

With clarified pleadings properly amended to account for the legal and factual developments over the past five years, Freed can still thereafter promptly raise the same ill-fated defenses of mootness and qualified immunity that he demands (see *infra*) be heard before the reopening of discovery. For example, he can immediately bring a Rule 12(c) motion in response to the filing of the amended complaint after answering it. Whatever motion Freed wants to make to raise his defenses would fit post-amendment in light of the change of the legal landscape, wholesale changes of the relevant legal tests, clarification on the applicable law and proofs needed, and Freed's shifting of his media practices from Facebook to LinkedIn. All point to providing Lindke the chance to make his case to this Court on a proper solid field of established precedent. After all, if "[t]he discovery [] conducted couldn't have been tailored toward satisfying a legal standard that had eluded all the parties as well as this court," then the pleadings suffer from the same shortcomings. With three different courts coming up with four or more different tests for the same pled claims, fault can hardly lie with Plaintiff in not picking the right test to plead accordingly.

As such, the further proceedings Plaintiff asserts as being required is for this

9

Court to first consider and provide leave to amend the complaint. Upon filing, Freed may respond with a Rule 12(b)(6) pre-answer or a Rule 12(c) post-answer where it can raise any sought defense that it thinks still remains after the clarifying amendment is made. Once that is decided, discovery is both warranted and required especially given the LinkedIn development. Following that, the Court can take up motions for summary judgment.

### **DEFENDANT'S POSITION**

Defendant submits to the Court that the Sixth Circuit spelled out in detail the further proceedings required in this case, all of which Plaintiff is attempting to avoid and bypass as if the Sixth Circuit did not so rule. See *Lindke v. Freed (on Remand)*, 114 F.4th 812, 820-21 (6th Cir. 2024)("We now turn to consider what the remand might look like. . . .").

Instead, Plaintiff wants to now make this case about LinkedIn, a whole new platform, after this case has been pending for five years about a Facebook account. Defendant strongly objects to any such amendment years after this case was filed, and after extensive appellate practice, which would obviously cause undue prejudice to Defendant. Significantly, LinkedIn is for an individual's professional networking and career development, a professional resume page, a platform far different from something such as Facebook. LinkedIn defines its platform as follows: "LinkedIn is the world's largest professional network on the internet. You can use LinkedIn to

10

find the right job or internship, connect and strengthen professional relationships, and learn the skills you need to succeed in your career." Thus, the First Amendment analysis is 180 degrees different from that of the Facebook account about which this case is centered. A person using a career development site is not purporting to speak on behalf of the state, a necessary element of a First Amendment claim as stated by the United States Supreme Court.

Instead, Defendant submits the further proceedings should take place in separate "steps" as already dictated by the Sixth Circuit as follows:

> **Step 1: Determine where the case is moot and rule upon the alternative grounds raised by Defendant in his initial Summary Judgment Motion.**

The Sixth Circuit stated:

> As an initial matter, **the district court should determine whether Lindke's claim for declaratory and injunctive relief is moot.** Freed's summary-judgment motion asserted that it was. As of 2021, Freed represented that his Facebook page had been deactivated for almost a year. He also testified that he wouldn't reinstate the page without assurances that he could operate it in his personal capacity. Of course, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). Because Freed's claim for mootness rests on his own voluntary decision to deactivate his Facebook page, he bears a "heavy burden of persuading" the court that the challenged conduct "cannot reasonably be expected to start up again." *Id.* (cleaned up). So, if the relevant facts are unchanged from three years ago, Lindke's claim for forward-looking relief likely isn't moot. But it's possible that the facts have changed in some way that would allow Freed to meet his burden of establishing mootness. We leave it to the district court to determine whether any such facts have emerged.

11

Additionally, Freed sought summary judgment on several grounds unrelated to the state action question. The district court had no occasion to pass on these theories the first time around because it granted Freed's motion on state-action grounds. *Lindke v. Freed*, 563 F. Supp. 3d 704, 708 (E.D. Mich. 2021). **But on remand, the district court should rule on these alternative theories before opening the door to additional discovery.**

*Id* at 820 [emphasis added].

Thus, Defendant believes the first step is that it should be allowed to refile its motion for summary judgment as to (1) mootness, updating the facts given the four-year passage of time, and (2) other alternative theories, such as qualified immunity, etc. "before opening the door to additional discovery". Significantly, Defendant desires to delete his inactive Facebook account, something that has remained inactive for years, and only has not deleted it to avoid spoilation of evidence in this case. Defendant will delete the account upon permission from the Court, thereby eliminating any normal concerns that exist in a "voluntary cessation" case. In other words, Defendant believes he can easily meet the "heavy burden" by deleting his long dormant inactive Facebook page.

> **Step 2: If Plaintiff's case survives Step 1, Plaintiff should be provided limited discovery on issues he did not have the opportunity to pursue previously and then Defendant should have the opportunity to file a motion for summary judgment on any applicable defense or theory.**

The Sixth Circuit set forth the second step in case Plaintiff is able to survive the mootness and alternative theories arguments raised in Defendant's initial motion for summary judgment:

12

> If the district court ultimately tackles the state-action question, it must give Lindke an opportunity to establish facts that became legally relevant only after the Supreme Court articulated its test. But the district court doesn't need to re-open discovery for issues on which Lindke already had a chance to develop the record the first time around.
>
> Start with the first prong of the state-action test, which asks whether Freed had authority to speak for the state on the matters in question. *Lindke*, 601 U.S. at 198–200. Our prior test asked a different question: whether Freed had authority to run a Facebook page. *Lindke*, 37 F.4th at 1203. So, the relevant object of authority has changed from authority to run a Facebook page to authority to speak for the state. As explained above, this authority can come from written law, custom, or usage. And permissible sources of custom could range from use of social media by Freed's predecessors to any other patterns established by Port Huron. If the district court determines that Lindke hasn't had an opportunity to show that these sources granted Freed authority to speak on the state's behalf, then discovery on this issue would be warranted.
>
> If Freed lacked actual authority to speak for the state, then there's no state action, and Freed is entitled to summary judgment. The district court would proceed to prong two only if Freed had actual authority. This prong asks whether Freed purported to exercise that authority in specific posts. *Lindke*, 601 U.S. at 203. To be sure, Lindke has already discovered a trove of Freed's Facebook posts. But on this prong, context is everything, so a fact-intensive analysis of individual posts might be necessary. Id. Lindke might need additional discovery to develop facts that could be important to understanding the context of Freed's posts.
>
> Lastly, even if discovery uncovers that some of Freed's posts were state action, a host of other First Amendment issues remain: what kind of forum Freed's social-media accounts are, what level of scrutiny his deletion or block decisions receive, and whether he's entitled to qualified immunity. We leave these interesting questions for another day.

*Lindke (on Remand)*, 114 F.4th at 820-21.

Thus, if this case survives to this "second step", the Sixth Circuit stated that Plaintiff should be permitted to take limited discovery into the following areas:

1. Whether Freed had "authority to speak for the state", which "can come from written law, custom, or usage", including "use of social media by Freed's predecessors" and "other patterns established by Port Huron;" and

2. Lindke has already discovered a trove of Freed's Facebook posts, "so a fact-intensive analysis of individual posts might be necessary".

However, the Sixth Circuit also made it clear that Plaintiff is only entitled to this discovery "if the district court determines that Lindke hasn't had an opportunity to show that these sources granted Freed authority to speak on the state's behalf" or take discovery on the Facebook posts.

This lawsuit was filed in April 2020 and included an "early discovery request" by Plaintiff. This Court then provided the parties with an extensive opportunity for discovery through November 1, 2020. Plaintiff was provided the entire available Facebook history of the "JamesRFreed1" Facebook page in response to a document request submitted to Defendant. Also, in Plaintiff's initial disclosures, he listed Defendant Freed as one of his persons with knowledge about "[t]he creation and operation of the James Freed's Facebook Page", and then he took the deposition of Defendant Freed where he asked questions about some of the individual posts and the contexts and reasons for the posts and had the opportunity to ask detailed questions about the context of any of the posts. Thus, if the case reaches this "second stage", Defendant believes Plaintiff has already had an opportunity to ask questions

14

about the individual posts, and, thus, discovery should be limited to whether Freed had "authority to speak for the state", which "can come from written law, custom, or usage", including "use of social media by Freed's predecessors" and "other patterns established by Port Huron", and not a post-by-post examination of the context of each post.

Assuming the case reaches this phase, after Plaintiff is allowed to take this limited discovery, Defendant should then be able to file a second motion for summary judgment based upon the "new" Supreme Court standard.

/s/ Philip L. Ellison
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff

/s/ Todd J. Shoudy
TODD J. SHOUDY (P41895)
Attorney for Defendant