UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KEVIN LINDKE,

              Plaintiff,

vs.

JAMES R. FREED
in his individual and official capacities,

              Defendant.
_____

Case No. 2:20-cv-10872

Hon. Mark A. Goldsmith
Magistrate Judge:
Hon. David R. Grand

PHILIP L. ELLISON (P74117)
THOMAS J. LAMBERT (P86348)
Outside Legal Counsel PLC
Attorney for Plaintiff
PO Box 107
Hemlock, Michigan 48626
(989) 642-0055
pellison@olcplc.com

TODD J. SHOUDY (P41895)
VICTORIA R. FERRES (P78788)
Fletcher Fealko Shoudy & Francis, P.C.
Attorneys for Defendant
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tshoudy@fletcherfealko.com
vferres@fletcherfealko.com

_____

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant James R. Freed, by and through his attorneys, Fletcher Fealko Shoudy & Francis, P.C., and hereby moves this Court for summary judgment pursuant to Fed R. Civ. P. 56 for the reasons stated in the accompanying Brief.

The undersigned counsel certifies that counsel communicated in writing with opposing party, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence. I, Victoria R. Ferres, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
Attorney for Defendant

By: / Victoria R. Ferres
1411 Third Street Suite F
Port Huron, Michigan 48060
(810) 987-8444
Michigan Bar #78788
vferres@fletcherfealko.com

DATED: May 27, 2026

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KEVIN LINDKE,

            Plaintiff,

vs.

JAMES R. FREED
in his individual and official capacities,

            Defendant.

_____

Case No. 2:20-cv-10872

Hon. Mark A. Goldsmith
Magistrate Judge:
Hon. David R. Grand

PHILIP L. ELLISON (P74117)
THOMAS J. LAMBERT (P86348)
Outside Legal Counsel PLC
Attorney for Plaintiff
PO Box 107
Hemlock, Michigan 48626
(989) 642-0055
pellison@olcplc.com

TODD J. SHOUDY (P41895)
VICTORIA R. FERRES (P78788)
Fletcher Fealko Shoudy & Francis, P.C.
Attorneys for Defendant
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tshoudy@fletcherfealko.com
vferres@fletcherfealko.com

_____

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

STATEMENT OF QUESTIONS PRESENTED......................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iv

INDEX OF AUTHORITIES.......................................................................... viii

INTRODUCTION .............................................................................................1

STATEMENT OF UNDISPUTED FACTS ........................................................3

I.  Procedural History .....................................................................................3

II.  The City of Port Huron..............................................................................6

III.  Freed's Facebook Page ...........................................................................7

IV.  Lindke's Interactions with Freed's Facebook Page...............................8

V.  Freed's Deactivation of his Facebook Page.............................................9

ARGUMENT ...................................................................................................11

I.       DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY ON THE
         DAMAGES CLAIM, AS THE CASE LAW WAS NOT CLEARLY
         ESTABLISHED. .....................................................................................11

II.      PLAINTIFF'S CLAIMS FOR INJUNCTIVE AND DECLARATORY
         RELIEF FAIL..........................................................................................14

         A.  There is no reasonable expectation that Freed will delete Plaintiff's
             comments or block Plaintiff from the Facebook Page when it no
             longer exists......................................................................................16

         B.  Interim events have completely and irrevocably eradicated the effects
             of the alleged violation. ...................................................................19

III.    LINDKE CANNOT ESTABLISH STATE ACTION. ..................................22

    A.  Freed did not have actual authority to speak on behalf of the City. ........22

    B.  Freed did not purport to speak on behalf of the City. ..............................23

CONCLUSION ..................................................................................................25

## STATEMENT OF QUESTIONS PRESENTED

### Question No. 1:

Whether Defendant is protected by qualified immunity because no clearly established law existed?

Defendant states the answer is: "Yes"
Plaintiff states the answer is: "No"

### Question No. 2:

Whether Plaintiff's injunctive and declaratory relief claims fail because they are moot?

Defendant states the answer is: "Yes"
Plaintiff states the answer is: "No"

### Question No. 3:

Whether Plaintiff can establish state action when Defendant deleted Plaintiff's comments and blocked Plaintiff from Defendant's personal Facebook page?

Defendant states the answer is: "No"
Plaintiff states the answer is: "Yes"

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019)

*Speech First v. Schlissel*, 939 F.3d 756 (6th Cir. 2019)

*Lindke v. Freed*, 601 U.S. 187 (2024)

# INDEX OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1969) ......................................................................................22

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937) ......................................................................................16

*Arizonans for Off. Eng. v. Arizona*,
  520 U.S. 43 (1997) ........................................................................................16

*Ashcroft v. Mattis*,
  431 U.S. 171 (1977) ......................................................................................15

*Bench Billboard Co. v. City of Cincinnati*,
  675 F.3d 974 (6th Cir. 2012) ........................................................................17

*Bishop v. Hackel*,
  636 F.3d 757 (6th Cir. 2011) ........................................................................11

*Brown v. Montoya*,
  662 F.3d 1152 (10th Cir. 2011) ....................................................................14

*Cagle v. Gilley*,
  957 F.2d 1347 (6th Cir. 1992) ......................................................................12

*Chirco v. Gateway Oaks, L.L.C.*,
  384 F.3d 307 (6th Cir. 2004) ........................................................................16

*City News & Novelty, Inc. v. City of Waukesha*,
  531 U.S. 278 (2001) ......................................................................................16

*Contra Pinkhasov v. Vernikov*,
  No. 1:23-CV-3460 (OEM) (SJB), 2024 U.S. Dist. LEXIS 87774 (E.D.N.Y. May
  15, 2024) ........................................................................................................18

*Daugherty v. Campbell*,
  935 F.2d 780 (6th Cir. 1991) ........................................................................12

*Demis v. Sniezek*,
   558 F.3d 508 (6th Cir. 2009) ................................................................15

*Essex v. Cnty. of Livingston*,
   518 Fed. App'x 351 (6th Cir. 2013) ......................................................11

*Fasking v. Allen*,
   No. 2:18-cv-809-JTA, 2023 U.S. Dist. LEXIS 51396 (M.D. Ala. Mar. 27, 2023)
   ................................................................................................................19

*FBI v. Fikre*,
   601 U.S. 234 (2024) ..............................................................................17

*Gay v. Cabinet for Health & Family Servs. Dep't*,
   No. 18-5285, 2019 U.S. App. LEXIS 2336 (6th Cir. Jan. 23, 2019) ...................15

*Greenawalt v. Ind. Dep't of Corr.*,
   397 F.3d 587 (7th Cir. 2005) ................................................................14

*Hall v. Beals*,
   396 U.S. 45 (1969) ................................................................................15

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982). .............................................................................12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ..............................................................................15

*Lane v. Franks*,
   573 U.S. 228 (2014) ..............................................................................24

*Lewis v. Clarke*,
   581 U.S. 155 (2017) ..............................................................................15

*Lindke v. Freed*,
   114 F.4th 812 (6th Cir. 2024) ............................................................2, 5

*Lindke v. Freed*,
   37 F.4th 1199 (6th Cir. 2022) ............................................................1, 4

*Lindke v. Freed*,
601 U.S. 187 (2024) ............................................................... 2, 4, 14, 22

*Lugar v. Edmonson Oil Co.*,
457 U.S. 922 (1982) ...................................................................22

*Malley v. Briggs*,
475 U.S. 335 (1986). ...................................................................12

*McGuire v. Strange*,
83 F. Supp. 3d 123 (M.D. Ala. 2015) ..................................................14

*McPherson v. Mich. High Sch. Athletic Ass'n*,
119 F.3d 453 (6th Cir. 1997) ..........................................................15

*Miller v. Davis*,
No. 15-5880, 2015 U.S. App. LEXIS 23060 (6th Cir. Aug. 26, 2015) ..............15

*Novack v. City of Parma*,
932 F.3d 421 (6th Cir. 2019) ..................................................... 13, 14

*Reichle v. Howards*,
566 U.S. 658 (2012). ...................................................................12

*Saladin v. Milledgeville*,
812 F.2d 687 (11th Cir. 1987) ........................................................17

*Small v. Brock*,
963 F.3d 539 n.2 (6th Cir. 2020) ......................................................16

*Speech First v. Schlissel*,
939 F.3d 756, 767 (6th Cir. 2019) ............................................... 16, 17

*Sullivan v. Benningfield*,
920 F.3d 401 (6th Cir. 2019) ..........................................................15

*Thomas v. City of Memphis*,
996 F.3d 318 (6th Cir. 2021) ..................................................... 18, 20

*Upton v. Thompson*,
930 F.2d 1209 (7th Cir. 1991) ........................................................12

*Walton v. City of Southfield*,
  995 F.2d 1331 (6th Cir. 1993) ...............................................................................12

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ..................................................................................................14

*Wilson v. Layne*,
  526 U.S. 603 (1999) ................................................................................................12

*Wimberly v. Experian Info. Sols., Inc.*,
  No. 18 Civ. 6058 (KPF), 2019 U.S. Dist. LEXIS 218104, at **28-30 (S.D.N.Y.
  Dec. 18, 2019) ........................................................................................................19

**Statutes**

42 U.S.C. § 1983 (2024) .............................................................................................22

**Constitutional Provisions**

U.S. Cons. Art. III, § 2 ...............................................................................................15

## INTRODUCTION

Plaintiff Kevin Lindke filed the present lawsuit on April 9, 2020 against Defendant James Freed in his individual and official capacity alleging that when Freed deleted posts made on his personal Facebook page (one he has used since his college days—well before he became City Manager for the City of Port Huron) and blocked Plaintiff from making additional posts, Freed violated the First Amendment to the United States Constitution. Shortly thereafter, Freed deactivated the Facebook Page but preserved the page in its deactivated status to comply with Federal Rule of Evidence 37(e).

After the initial close of discovery, this Court granted Freed's motion for summary judgment on September 27, 2021 (ECF No. 34), on the basis that Freed's actions "were not state action that required him to conform to constitutional strictures" (ECF No. 34, PageID.1523). Because of this finding, the Court did "not confront Freed's other arguments for summary judgment" (ECF No. 34, PageID.1527). On appeal, the Sixth Circuit agreed with this Court and affirmed but applied a slightly different test in making that determination. *Lindke v. Freed*, 37 F.4th 1199, 1203-04 (6th Cir. 2022). The Sixth Circuit held: "Freed did not operate his page to fulfill any actual or apparent duty of his office. And he didn't use his governmental authority to maintain it. Thus, he was acting in his personal capacity— and there was no state action." *Id.* at 1207.

The United States Supreme Court granted certiorari and reversed, adopting yet another new state action test, and remanded the case back to the Sixth Circuit. *Lindke v. Freed*, 601 U.S. 187, 204 (2024) ("The state-action doctrine requires Lindke to show that Freed (1) had actual authority to speak on behalf of the State on a particular matter, and (2) purported to exercise that authority in the relevant posts. To the extent that this test differs from the one applied by the Sixth Circuit, we vacate its judgment and remand the case for further proceedings consistent with this opinion.").

On remand at the Sixth Circuit, Freed requested that the Court rule on the facts from below, but Plaintiff insisted that he needed discovery on the new standard. The Sixth Circuit agreed, in part, to Plaintiff's request and remanded the case to this Court. *Lindke v. Freed*, 114 F.4th 812 (6th Cir. 2024). In the remand decision, the Court set forth a potential path for this Court to take: "As an initial matter, the district court should determine whether Lindke's claim for declaratory and injunctive relief is moot." *Id.* at 820. The Sixth Circuit suggested to this Court that if Plaintiff's case survived these arguments, then it could consider Plaintiff's request for additional discovery and ultimately the state action inquiry. *Id.*

Rather than follow the path the Sixth Circuit suggested, Lindke advocated for a period of discovery prior to motion practice. The Court agreed and allowed the parties a lengthy period of discovery. Significantly, despite all the rulings by both

this Court and the Sixth Circuit allowing Lindke to obtain discovery on facts relevant to the new standard, **Lindke chose not to conduct any discovery**.

Freed requests that this Court dismiss Plaintiff's claim for monetary damages because such a claim is barred by qualified immunity and dismiss Plaintiff's claims for injunctive and declaratory relief because they are moot. If either of these arguments fail, Lindke cannot demonstrate state action under the Supreme Court's newly-created test because the undisputed evidence shows that (1) Freed did not speak on his Facebook page pursuant to any statute, ordinance, regulation, or custom; and (2) Freed did not purport to speak pursuant to any authority granted to him by the government on his Facebook Page—he only purported to speak as a private citizen.

## STATEMENT OF UNDISPUTED FACTS

### I.     Procedural History

1.     Freed filed a Motion for Summary Judgment on February 21, 2021. (ECF No. 23). Freed argued that summary judgment was proper for the following reasons: (1) Lindke could not establish state action; (2) even if state action existed, the Facebook Page was a nonpublic forum and the restrictions drawn on Lindke's speech were reasonable; (3) Freed was entitled to qualified immunity on the damages claim; (4) Lindke could not establish a *Monell* claim; and (5) Lindke's claims for declaratory and injunctive relief were moot.

2.     On September 27, 2021, this Court issued an opinion and order granting

3

Freed's Motion for Summary Judgment.  (ECF No. 34).  This Court addressed the mootness argument and found that the case was not moot because Lindke had a claim for monetary damages but dismissed the case because Lindke could not establish state action.  (Id. at PageID.1523).

3.      Lindke appealed, and the Sixth Circuit affirmed, applying a different test that "part[e]d ways" with other circuits and focused on the government employee's duties and authority.  *Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022). The Sixth Circuit found that "Freed did not operate his page to fulfill any actual or apparent duty of his office. And he didn't use his governmental authority to maintain it. Thus, he was acting in his personal capacity—and there was no state action." *Id*. at 1207.

4.      Lindke appealed to the United States Supreme Court.  The Supreme Court reversed and remanded, adopting a two-prong test for determining whether social media posts by a government official constitute official or private speech.  The Court held "that such speech is attributable to the State only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise such authority when he spoke on social media. *Lindke v. Freed*, 601 U.S. 187, 191 (2024).

5.      Following the remand to the Sixth Circuit, Plaintiff filed a Motion to Remand to this Court.  (Case No. 21-2977, Doc. No. 39).  The Sixth Circuit ordered the parties to submit supplemental briefing regarding whether remand was

appropriate and held oral argument.  (Case No. 21-2977, Doc. No. 42-1)

6.     On August 21, 2024, the Sixth Circuit issued an Opinion and Order remanding the case to this Court, finding that the "Supreme Court's test changes the relevant inquiries"; therefore, Lindke "needs to further develop the record before a court can resolve his claims." *Linke v. Freed*, 114 F.4th 812, 820 (6th Cir. 2024). The Sixth Circuit noted that the Supreme Court's test created a "legal standard that had eluded all the parties as well as this court." *Id.*

7.     The Sixth Circuit then suggested that this Court should "determine whether Lindke's claim for declaratory and injunctive relief is moot and address Freed's additional arguments for summary judgment that were unrelated to the state action question before opening additional discovery." *Id.*

8.     After the case was remanded, Lindke requested that the Court allow a period of discovery rather than follow the Sixth Circuit's directive to address Freed's mootness argument and additional arguments for summary judgment.  This Court agreed with Lindke and elected to grant the parties a period of discovery and then set a deadline for the filing of dispositive motions on all issues.  The Court's re-issued scheduling order provided that written discovery should be completed by February 25, 2026, and all discovery should be completed by April 27, 2026. (ECF No. 61, PageID.1811).

9.     Despite zealously advocating for discovery to reopen, Lindke did not conduct any discovery whatsoever during the re-opened discovery period or even

5

submit the written discovery he stated he intended to submit.

## II.     The City of Port Huron

10.     Freed has been the Port Huron City Manager since 2014.  (ECF No. 23-2, PageID.670).  The City's government is comprised of a Mayor and six Council members, all elected at large.  Charter § 2-2(a).[1]

11.     The City has its own website with links to various departments, including the City Manager.[2]  The City also operates several Facebook pages, including pages for the "Port Huron Police Department" and "City of Port Huron Parks & Recreation Department," but the City does not have a "City Manager" Facebook page.  (ECF No. 23-4, PageID.700-01).

12.     The City does not have an Ordinance that authorizes the City Manager to speak on behalf of the City.  The Director of Public Safety, not the City Manager, is authorized to release emergency public information to the media.  City Code § 20-15(1).

13.     Since 1988, there has been no history of the City's prior City managers speaking publicly on the City's behalf.  (Exhibit A, Repp Affidavit ¶¶ 3-6).

---

[1] Citations to "City Charter" refer to the City of Port Huron City Charter, which is available at *Charter*, City of Port Huron, WWW.ECODE360.COM, https://ecode360.com/30100704 (last accessed May 21, 2026) and citations to "City Code" refer to the City of Port Huron Code of Ordinances, which is available at *Code of Ordinances*, City of Port Huron, WWW.ECODE360.COM, https://ecode360.com/PO3610 (last visited May 21, 2026).

[2] The City's website is available at City of Port Huron, CITY OF PORT HURON, MI, https://porthuron.org/ (last visited May 21, 2026).

14.     The City's Mayor from 2009 through 2024 believed that a city manager issuing a press release or holding a press conference was an overstep of the city manager's duties.  (Exhibit A, Repp Affidavit ¶ 7).  Instead, the Mayor and Council were the public face of the City.  (Exhibit A, Repp Affidavit ¶ 6).

### III.     Freed's Facebook Page

15.     Freed created a personal Facebook account with the name "James Freed" and username "@JamesRFreed1" while he was in college at Indiana Wesleyan University prior to 2008 (ECF No. 23-3, PageID.699).  The login for the account is jamesrfreedfacebook@gmail.com. (ECF No. 29-9, PageID.1498).

16.     In 2011, before being hired by the City of Port Huron, Freed converted his Facebook profile to a public page because, as a very active social media user, he was reaching the friend limit of 5,000 (the "Facebook Page").  (ECF No. 23-2, PageID.669).

17.     Freed never used authority granted to him by the City of Port Huron while operating his Facebook Page.  (Exhibit B, Freed Aff ¶ 2).

18.     Freed always spoke and interacted as a private citizen on his Facebook Page.  (Exhibit B, Freed Aff ¶ 2; see also ECF No. 23-2, PageID.676 ("This is my personal Facebook page."); PageID.679-680 ("If it wasn't – to be quite frank, if I couldn't use it as a personal page, I wouldn't have had one.  You know, I don't want an official city manager page."); PageID.687 ("I assumed it was a private page.  If it is not going to be a private page, I don't want it.  I don't want to have – I wouldn't

have put photos of my family out there.  I wouldn't put photos of my kid out there

if I didn't have the ability to control it like a personal page.")).

19.     The City did not provide monetary or administrative support for Freed's

Facebook Page.  (*Id.* at PageID.676, 679-80).  Freed never accessed his personal

Facebook Page on a City device.  (*Id.* at PageID.676, 679-80).

20.     Freed never issued administrative directives or press releases on his

Facebook Page.  (ECF No. 23-2, PageID.671).

21.     Freed testified "nothing was ever announced on my Facebook that

wasn't readily available, either city press releases, newspaper articles, other

information sources, I didn't make announcements like first time you hear it here on

my Facebook page." (ECF No. 23-2, PageID.671; ECF No. 23-9, PageID.795

(January 14, 2020 post at 2:06pm linking to a local newspaper article and stating,

"This morning I issued an emergency directive to the Public Works & Fire

Departments to begin filling and pre-positioning sandbags to vulnerable property

owners.")).

### IV.     Lindke's Interactions with Freed's Facebook Page

22.     Lindke claims that he commented on posts on Freed's Facebook Page

four to six times from three different accounts he owns until Freed deleted the

comments and blocked the accounts in early 2020 (ECF No. 23-17, PageID.979).

23.     Freed testified:

I just remember one time he wrote like three weird smiley faces, and

8

that was like the first time I saw him on my page. And to be quite honest, I was really creeped out, because I had been aware of other things in this community where he had essentially stalked people, harassed people, lots of PPOs and records. So when I block[ed Lindke], I blocked him not on what he -- because I can't really recall anything he posted. I blocked him specifically on who he was. And I know what he's done in the community to some school employees and other stuff, so I blocked him just on who he was. I can't recall besides the three smiley faces anything that he specifically wrote. [ECF No. 23-2, PageID.677-78.]

24.     Although Freed has no recollection of Lindke's specific comments, Freed deleted Lindke's comments and blocked Lindke from posting on his Facebook Page. (ECF No. 23-2, PageID.677-78).

25.     Because Freed had always treated his page "as anyone would their own personal Facebook," Freed had also deleted comments and blocked other users in the past when, for example, he thought a user's comments were "creepy." (ECF No. 23-2, PageID.674, 676).

## V.     Freed's Deactivation of his Facebook Page

26.     Freed continued to maintain his Facebook Page until April 2020 when it was involuntarily deactivated by Facebook without explanation (ECF No. 23-2, PageID.686). Freed went through the steps to reactivate the account and it was back up in June 2020 (Id).

27.     On June 24, 2020, the undersigned downloaded Freed's Facebook Page, which was produced to Plaintiff in Freed's Rule 26 Disclosures.

28.     Shortly thereafter, the Facebook Page was disabled again without

9

explanation and became available again in October 2020, at which time Mr. Freed voluntarily deactivated the page (ECF No. 23-2, PageID.687).

29. Freed testified in December 2020 that he had no plans to reactivate his Facebook Page: "If it is not going to be a private page, I don't want it. I don't want to have -- I wouldn't put photos of my family out there. I wouldn't put photos of my kid out there if I didn't have the ability to control it like a personal page. So it is un-published. Nobody can find it" (Id.).

30. After Freed was granted summary judgment on September 27, 2021, Freed made a single Facebook post one week later on October 5, 2021 regarding the Community Foundation of St. Clair County. (Exhibit B, Freed Aff ¶ 3). Freed then deactivated the Facebook Page again but continued to preserve the Facebook Page for purposes of Lindke's appeal. (Exhibit B, Freed Aff ¶ 6).

31. Freed has not reactivated the Facebook Page since October 2021 and did not have the password to the Facebook page for several years. (Exhibit B, Freed Aff ¶ 4).

32. On September 4, 2024, Freed downloaded the entirety of the Facebook Page from 2011 to present for purposes of this litigation. (Exhibit B, Freed Aff ¶ 5).

33. But for the requirement that Freed preserve the Facebook Page under the Federal Rules of Evidence, Freed would permanently delete the Facebook Page. (Exhibit B, Freed Aff ¶ 7).

34. Freed has no intent to operate the Facebook Page or any City of Port

Huron City Manager Facebook page at any point in the future.  (Exhibit B, Freed

Aff ¶ 9).

## ARGUMENT

I.  **DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY ON THE DAMAGES CLAIM, AS THE CASE LAW WAS NOT CLEARLY ESTABLISHED.**

The qualified immunity analysis has two components that must be established

by a plaintiff at the summary judgment stage: a plaintiff must show that (1) the

defendant violated a constitutional right[3] and (2) that right was clearly established.

*Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011).  A plaintiff bears the burden of

showing that a clearly established right has been violated and that the official's

conduct caused that violation.  *Essex v. Cnty. of Livingston*, 518 Fed. App'x 351,

357 (6th Cir. 2013).  As the Sixth Circuit explained:

> The defense protects a defendant from different and distinct burdens. It not only protects a defendant from liability but may also protect a defendant from the burdens of trial and discovery. [*Kennedy v. City of Cleveland*, 797 F.2d 297, 299 (6th Cir. 1986), cert. denied, 479 U.S. 1103 (1987)]. Thus, as this Circuit holds, a qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial. *Id.* at 299-300. A denial of the defense at any stage entitles a defendant to an immediate appeal. If the trial court's ruling is affirmed on appeal, the defendant may raise the defense at the next stage of litigation and appeal again if the defense is denied. *Id.* While the issue is before the trial court or the case is on appeal, the trial court should stay discovery.  [*English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994)].

---

[3] This argument is contained within Section III, *infra*.

11

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine whether an action violated a clearly established law, courts look at the objective reasonableness of the action considering the legal rules that were clearly established at the time the action was taken. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (quoting *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991)) ("In inquiring whether a constitutional right is clearly established, we must 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.'"). A circuit split indicates that an issue is "unsettled as a matter of constitutional law." *Cagle v. Gilley*, 957 F.2d 1347, 1349 (6th Cir. 1992); *Upton v. Thompson*, 930 F.2d 1209, 1217 (7th Cir. 1991) ("such a [circuit] split is indicative of the fact that the . . . rights in this regard are currently unsettled as a matter of constitutional law and therefore were not 'clearly established' at the time").

12

In July 2019, the year before this case was filed, the Sixth Circuit decided *Novak v. City of Parma*, which involved  comments on an official police department Facebook page that were deleted by two of the defendant officers.  932 F.3d 421 (6th Cir. 2019).   The Sixth Circuit found the officers were protected by qualified immunity:

> These claims fail because they are not based on clearly established law. The First Amendment no doubt applies to the wild and "vast democratic forums of the Internet." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017). But when it comes to online speech, the law lags behind the times. And rightly so. "The forces and directions of the Internet are so new, so protean, and so far reaching that courts must be conscious that what they say today might be obsolete tomorrow." *Id.* at 1736; *see also id.* at 1744 (Alito, J., concurring in the judgment) (noting that courts should "proceed circumspectly, taking one step at a time" in applying "free speech precedents" to the Internet).  Courts have not reached consensus on how First Amendment protections will apply to comments on social media platforms.  So far, the courts that have considered the issue have taken different approaches.  *See Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1012-13 (E.D. Ky. 2018) (denying preliminary injunction regarding the deletion of Facebook and Twitter comments in a case of first impression).  *But see Davison v. Randall*, 912 F.3d 666, 687-88 (4th Cir. 2019) (holding that a government official violated the First Amendment by banning a critical constituent from a Facebook page). No doubt, any right Novak or the commenters may have to post or receive comments was not "beyond debate" at the time the officers deleted the comments. *al—Kidd*, 563 U.S. at 741. Riley and Connor are entitled to qualified immunity from these claims.

*Id.* at 433-34; *see also Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 624-27 (S.D.N.Y. 2020) (state senator entitled to qualified immunity because no clearly established law existed to give the senator notice that he could not block the plaintiff from his Facebook page).

13

It is absolutely clear that there was no clearly established law that was "beyond debate" when Freed blocked Lindke or deleted Lindke's comments from his personal Facebook Page given: (1) the Supreme Court's acknowledgement of a circuit split, *Lindke*, 601 U.S. at 194 ("The Sixth Circuit's approach to state action in the social-media context differs from that of the Second and Ninth Circuits"); (2) the Sixth Circuit's acknowledgement in the instant case that the legal standard "eluded all the parties as well as this court," *Lindke*, 114 F.4th at 820; and (3) the Sixth Circuit's decision in *Novak*, 932 F.3d 433-34 in 2019 (the year before this case was filed) upholding qualified immunity in a similar social media case when courts had taken "different approaches" "on how First Amendment protections will apply to comments on social media platforms."   Accordingly, Lindke's claims for monetary damages are barred because Freed is entitled to qualified immunity.

## II.   PLAINTIFF'S CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF FAIL.

Plaintiff's claims for injunctive and declaratory relief are moot.[4]   "Federal courts are courts of limited jurisdiction. They possess only that power authorized by

---

[4] Claims for injunctive and declaratory relief may not be pursued against Freed in his individual capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005); *McGuire v. Strange*, 83 F. Supp. 3d 1231, 1242 n.8 (M.D. Ala. 2015) (claims for declaratory and injunctive relief cannot be asserted against municipal officials in their individual capacities).   Thus, Plaintiff's official capacity claim is effectively a

Constitution and statute . . . which is not to be expanded by judicial decree."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal

citations omitted).  Article III of the United States Constitution limits the power of

federal courts to "[c]ases" and "[c]ontroversies."  U.S. Cons. Art. III, § 2.  A federal

court "lacks jurisdiction to consider any case or issue that has 'lost its character as a

present, live controversy and thereby becomes moot.'"  *Demis v. Sniezek*, 558 F.3d

508, 512 (6th Cir. 2009) (citing *Hall v. Beals*, 396 U.S. 45, 48 (1969)).  "Ultimately,

the 'test for mootness is whether the relief sought would, if granted, make a

difference to the legal interests of the parties.'" *Sullivan v. Benningfield*, 920 F.3d

401, 410 (6th Cir. 2019) (emphasis added) (quoting *McPherson v. Mich. High Sch.*

*Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)); *Ashcroft v. Mattis*, 431

U.S. 171, 172 (1977) ("For a declaratory judgment to issue, there must be a dispute

which "calls, not for an advisory opinion upon a hypothetical basis, but for an

---

claim against the City Manager position itself, as the relief obtained in an officially capacity suit "is only nominally against the official and in fact is against the official's office."  *Lewis v. Clarke*, 581 U.S. 155, 162 (2017); *see also Gay v. Cabinet for Health & Family Servs. Dep't*, No. 18-5285, 2019 U.S. App. LEXIS 2336, at *18 (6th Cir. Jan. 23, 2019) ("We again note that the individual Defendants can be sued in their *individual* capacity for *money damages*, and additionally, the individual Defendants can be sued in their *official* capacity as to the *injunction* (because injunctions run against the office, not the individual.)")(attached as Ex. C); *Miller v. Davis*, No. 15-5880, 2015 U.S. App. LEXIS 23060, at *3 (6th Cir. Aug. 26, 2015) ("The injunction operates not against Davis personally, but against the holder of her office of Rowan County Clerk.")(attached as Ex. D).  Accordingly, when "officials sued in their official capacities leave office, their successors automatically assume their role in the litigation." *Lewis*, 581 U.S. at 162.

adjudication of present right upon established facts." (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)); *Small v. Brock*, 963 F.3d 539, 543 n.2 (6th Cir. 2020) (holding that, in the absence of a real and immediate threat that the action will occur in the future, a plaintiff is not entitled to declaratory relief). The requirement for a live controversy "must be extant at all stages of review." *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997)).

Voluntary cessation will moot the case if the defendant can show (1) that "there is no reasonable expectation that the alleged violation will recur" and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Speech First v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019) (internal citations omitted). The voluntary cessation "rule traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).

### A. There is no reasonable expectation that Freed will delete Plaintiff's comments or block Plaintiff from the Facebook Page when it no longer exists.

As the Sixth Circuit has previously reasoned, government defendants who make representations that certain conduct has been discontinued are entitled to more deference than private parties, as courts "presume that the same allegedly wrongful conduct by the government is unlikely to occur" and, therefore, "'such self-

16

correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine.'" *Speech First*, 939 F.3d at 767 (quoting *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012)).  The focus is on whether a government actor's alleged violation "could not reasonably be expected to recur," which "takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." *Speech First*, 939 F.3d at 768 (internal marks and citation omitted). The potential for the defendant's future conduct is the primary consideration.  *FBI v. Fikre*, 601 U.S. 234, 244 (2024).

The Southern District of New York found that a plaintiff's claims were moot in a case involving a state senator who blocked and muted a Facebook user in *Wagschal*, 442 F. Supp. 3d at 621-23.  The senator ensured the court that he did not intend to ban or block Plaintiff's access to his Facebook page at any time in the future. *Id.* at 621.  The Court recognized that this alone may not be enough, but the totality of circumstances showed that the conduct was not reasonably expected to recur because he took actions such as "terminat[ing] the conduct giving rise to this case long before filing the present motion" and "refrain[ing] from any further violations, or perceived violations." *Id.* at 622; *see also Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987) (finding the plaintiffs' Establishment Clause claim moot when the "City [was] no longer displaying the seal at the challenged location and promised not to display them there again in the future" because "[t]here

17

is nothing left for the court to do on those claims except declare that the practices are unconstitutional for the principle of the matter," which "does not present a justiciable claim"); *Thomas v. City of Memphis*, 996 F.3d 318, 321 (6th Cir. 2021) (media figure's claims for injunctive and declaratory relief after being blocked from city listserv moot when the city changed its media policy so that media advisories were posted on the city's website or social media sites and expressly prohibited the city from using email listservs). *Contra Pinkhasov v. Vernikov*, No. 1:23-CV-3460 (OEM) (SJB), 2024 U.S. Dist. LEXIS 87774, at *17 (E.D.N.Y. May 15, 2024) ("The total quantum of assurance that Councilmember Vernikov provides to the Court as to whether she would block Pinkhasov on social media again in the future . . . is the representation that she has 'no intention of using the banning function on [Twitter] to block Plaintiff from interacting with [her Twitter] account in the future, presuming [Pinkhasov's] conduct does not violate the law.'").

Here, Freed not only assures the court that he will not block Plaintiff or delete Plaintiff's comments in the future, but Freed also assures the Court that he will delete the Facebook Page altogether when sufficient discovery has been completed to comply with Federal Rule of Evidence 37(e). (Freed Aff ¶ 7). Freed's assurance aligns with the fact that Freed has not used the Facebook page in nearly six years aside from reactivating the page to make a single post after this Court's initial grant of summary judgment. (Freed Aff ¶ 3). As a government actor, Freed's assurances are entitled to deference. The totality of the circumstances clearly shows that Freed

18

will not delete Lindke's comments or block Lindke from his Facebook Page that has not existed for nearly six years.  Moreover, the City of Port Huron now has an official Facebook Page where City related posts are made on behalf of the City.  (Freed Aff ¶ 9).

### B. Interim events have completely and irrevocably eradicated the effects of the alleged violation.

The deletion of Freed's Facebook Page will completely and irrevocably eradicate the effects of the alleged violation, as there is no real and immediate threat of future injury as it relates to a deleted Facebook account.

Claims have been found to be completely and irrevocably eradicated when a contested practice was discontinued and could not be reinstated. *See Wimberly v. Experian Info. Sols., Inc.*, No. 18 Civ. 6058 (KPF), 2019 U.S. Dist. LEXIS 218104, at \*\*28-30 (S.D.N.Y. Dec. 18, 2019) (finding that the plaintiff would not be able to make a showing "as to how he might still be affected by the alleged violation now that it has ceased" when defendant purged accounts from a credit report and there was "no mechanism by which the information can reappear on the report") (Exhibit E).

The Middle District of Alabama decided a similar case in March 2023. *Fasking v. Allen*, No. 2:18-cv-809-JTA, 2023 U.S. Dist. LEXIS 51396 (M.D. Ala. Mar. 27, 2023) (Exhibit F).  Three plaintiffs filed suit against the Alabama Secretary of State John Merrill in his official capacity seeking declaratory and injunctive relief

19

after the Secretary of State blocked them on his @JohnHMerrill Twitter account. *Id.* at \*\*2-4. In January 2023, a new Secretary of State took office. *Id.* at \*4. The @JohnHMerrill Twitter account remained the sole property of Mr. Merrill, and the new Secretary of State's Office operated a separate official Twitter account. *Id.* at \*\*4-5.

The Court found that "issuing a declaration as to the constitutionality of Merrill's blocking of individuals from the @JohnHMerrill account would be an impermissible declaration on principle alone, without any accompanying live, actual case or controversy" given that "when he left office, he took with him the @JohnHMerrill account, and along with it, all power to make policies regarding the block of Twitter users from it." *Id.* at \*16; *see also Thomas*, 996 F.3d at 330 ("Any injunction or order declaring Plaintiff's alleged removal from the Media Advisory List unconstitutional would amount to exactly the type of advisory opinion that Article III prohibits.").

The Court further rejected Plaintiff's argument that a declaratory judgment regarding the blocking of individuals from the @JohnHMerrill account "would have the practical effect of precluding the possibly that Defendant Allen [the then current Secretary of State] might at one day reactivate *his own* private Twitter account, decide to convert that into a tool of governance, and at some point block someone, possibly even one of the Plaintiffs, from that account on the basis of content or viewpoint." *Id* at \*17. The Court found that such a declaratory judgment was

20

impermissible given that it depended on "an attenuated chain of theoretically possible events" and that the plaintiffs "did not frame their Complaint as challenging a Secretary of State policy of converting personal Twitter accounts (other than the @JohnHMerrill account) into tools of official administration."  *Id.* at **18-19 ("From the beginning, this case is and always has been about the Secretary of State's use of the @JohnHMerrill account (allegedly as a tool of office), about the Secretary of State blocking Plaintiffs from the @JohnHMerrill account, and about the constitutionality of the Secretary of State blocking Plaintiffs from the @JohnHMerrill account based on content and viewpoint.").

Once Freed's Facebook Page is deleted, Freed cannot unblock Lindke or revive Lindke's deleted comments even if ordered to do so.  The deletion of the Facebook Page, therefore, completely and irrevocably eradicates the effects of the alleged violation.  Any injunction or order declaring Freed's actions in blocking Lindke or deleting Lindke's comments would be an "impermissible declaration on principle alone" and "exactly the type of advisory opinion Article III prohibits." *See id.* at *16.

Because there is no real and immediate threat that Lindke's will be blocked from or his comments will be deleted from Freed's Facebook Page, Lindke's claims for injunctive and declaratory relief are moot.

### III.   LINDKE CANNOT ESTABLISH STATE ACTION.

If Lindke gets by either the qualified immunity argument or the mootness argument, as the Sixth Circuit outlined, this Court should address the state action inquiry. 114 F.4th at 821. To establish state action under the Supreme Court's test, Lindke must show that Freed (1) had actual authority to speak on behalf of the State on a particular matter, and (2) purported to exercise that authority in the relevant posts. *Lindke v. Freed*, 601 U.S. 187, 204 (2024). Lindke cannot establish either prong of the test.

### A.   Freed did not have actual authority to speak on behalf of the City.

The Supreme Court expressed that the first prong of the test was "grounded in the bedrock requirement that 'the conduct allegedly causing the deprivation of a federal right be *fairly attributable to the State*." *Id.* at 198 (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)) (emphasis in original). Government actors cannot "conjure the power of the State through [their] own efforts . . . the presence of state authority must be real, not a mirage." *Id.* at 199.

Instead, Section 1983 lists the potential sources of state authority: "statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983 (2024). While written law is self-explanatory, the Supreme Court clarified that "custom" or "usage" is considered "'persistent practices of state officials' that are 'so permanent and well settled' that they 'carry the force of law.'" *Lindke*, 601 U.S. at 200 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1969)). By way of example, the Supreme

22

Court indicated that a city manager could have authority to speak on behalf of the government in the absence of written law if "prior city managers have purported to speak on its behalf and have been recognized to have that authority for so long that the manager's power to do so has becomes 'permanent and well settled.'" *Id.* at 200 (quoting *Adickes*, 398 U.S. at 168).

Lindke cannot point to any authority from written law that demonstrates that Freed had the authority to speak on behalf of the City.  The City's prior Mayor and Clerk for over 40 years confirms that prior city managers did not speak on behalf of the City. (Exhibit B, Repp Aff ¶¶ 2-6).  Therefore, there is no custom or usage because prior city managers did not purport to speak on the City's behalf for so long that such authority became "'permanent and well settled.'"  *Id.* at 200 (quoting *Adickes*, 398 U.S. at 168).  Freed cannot "conjure the power" of the City on his own. *Id.* at 199.  This case, therefore, fails on the first prong of the Supreme Court's test because Lindke cannot meet his burden of presenting evidence that meets the "threshold showing of authority." *Id.* at 201.

### B.      Freed did not purport to speak on behalf of the City.

Assuming *arguendo* that Lindke could meet the threshold requirement of authority, then the Court must determine if Freed purported to use that authority. This requires a "fact-specific undertaking in which the post's content and function are the most important considerations." *Id.* at 203.  To assess this inquiry, the Supreme Court directed lower courts to evaluate "additional factors" when there is

23

doubt as to whether the public official was purporting to exercise his authority, providing that "an official who uses government staff to make a post will be hard pressed to deny that he was conducting government business." *Id.* at 203. The Supreme Court also found that appearance and function could be relevant to this inquiry. *Id.* at 198. However, the Supreme Court cautioned that public officials may still engage "in private speech 'relate[d] to his public employment" or 'concern[ing] information learned during that employment'" without engaging in state action. *Id.* at 203 (quoting *Lane v. Franks*, 573 U.S. 228, 238 (2014)).

As this Court previously found in 2021, it is undisputed that Freed did not use government resources, employees, or funds on his Facebook Page. (ECF No. 34, PageID.1533). In fact, Freed was the only person to ever post on his Facebook Page. (ECF No. 23-2, PageID.676, 679-80). Freed's Facebook posts were "overwhelmingly personal in nature" and "did not claim to promulgate City policies but rather amalgamated and shared information from that originated from other sources." (ECF No. 34, PageID.1534, 1536). Posts included a post sharing a press release he released as City Manager regarding incorrectly mailed water bills (ECF No. 23-5, PageID.713) (April 25, 2020); the St. Clair County Health Department's COVID-19 data and press releases; the City's COVID-19 Resource Page (ECF No. 23-7, PageID.734)(April 2, 2020); and the City Recreation Department's virtual class offerings (March 20, 2020) (ECF No. 23-7, PageID.759).

24

Regarding the appearance and function of Freed's Facebook Page, this Court's findings in 2021 remain relevant and true: Freed's username was not connected to his position, the title of the page did not include Freed's official title, the page was not designated as a "government official" page, the account was not registered to the City, the page would not become state property when Freed was no longer employed by the City, and purely private individuals could also include a link to the government website on his or her page.  (ECF No. 34, PageID.1535-1536). These characteristics of Freed's Facebook Page "contrast[] notably" with the City's other Facebook pages that "readily signaled their official governmental nature" and "feature official titles and government emblems."  (ECF No. 34, PageID.1535).

Lindke cannot present any evidence demonstrating that Freed purported to operate his Facebook Page in his capacity as City Manager.  Freed says that he purported to speak as a private citizen. (Exhibit B, Freed Affidavit ¶ 2).  Application of the Supreme Court's test does not alter the outcome of this Court's previous decision in 2021—Freed's Facebook Page was operated in his personal capacity.

## CONCLUSION

Based upon the foregoing arguments and authorities, Defendant requests that this case be dismissed pursuant to Fed. R. Civ. P. 56.

FLETCHER FEALKO
SHOUDY & FRANCIS, P.C.
Attorney for Defendant

By: /s/ Victoria R. Ferres (P78788)
1411 Third Street, Suite F, Port Huron,
Michigan 48060
(810) 987-8444

DATED: May 27, 2026            vferres@fletcherfealko.com

The undersigned certifies that a copy of the foregoing instrument was served upon attorneys for Plaintiff on May 27, 2026 by electronic filing.

/s/ Theresa A. Messing
Theresa A. Messing
Fletcher Fealko Shoudy & Francis, P.C.
1411 Third Street, Suite F
Port Huron, Michigan 48060
(810) 987-8444
tmessing@fletcherfealko.com

26